**Danbi Kim MARTIN, an infant, by her Next Friend Degore MARTIN, Plaintiff,**

v.

**JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Defendant.**

**Civil Action No. 2:98–0104.**

United States District Court, S.D. West Virginia, Charleston Division.

July 12, 1999.

 

J. Nicholas Barth, Barth, Thompson & George, Charleston, WV, for plaintiff.

Dana F. Eddy, Marcus A. Spatafore & Christina L. Townsend, Jackson & Kelly, Charleston, WV, for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Plaintiff Danbi Kim Martin's motion for ruling on choice of law. The Court **GRANTS** the motion insofar as it seeks a ruling, and the Court **HOLDS** Guam law will apply to this action.

### I. FACTUAL BACKGROUND

On June 22, 1993 insured Jung Lana Martin, Danbi's mother, obtained a life insurance policy from Defendant John Hancock Mutual Life Insurance Company (John Hancock) in the amount of Three Hundred Thousand Dollars ($300,000.00). The policy named Danbi as beneficiary. Jung applied for and received the policy in the Territory of Guam. The policy does not contain a choice-of-law provision.

On January 25, 1995, Jung allegedly died, rendering John Hancock liable potentially to Danbi for $300,000.00. DeGore Martin, Jung's husband and Danbi's father, submitted the official "Report of Death of an American Citizen Abroad" from the United States government to John Hancock to claim the proceeds for Danbi. At the time of DeGore's submission of this document to John Hancock, he and Danbi both resided in West Virginia.

John Hancock conducted an investigation into the death of Jung, which allegedly occurred outside the United States. The investigation revealed several facts inconsistent with the reported death of the insured. Accordingly, John Hancock avers the "Report of Death of an American Citizen" does not constitute adequate proof of the insured's death under the policy. This action ensued.

Danbi moved seeking to apply West Virginia law to the issue of adequacy of proof

of death submitted to John Hancock. She asserts this is proper, because West Virginia stands as the state with the most significant relationship to the action. She bases this assertion on her residing in West Virginia at the time of her mother's death and that she and her mother moved to Guam only one month prior to application for the policy.

John Hancock counters that because Jung contracted for the policy in Guam, territorial law should govern. However, given the paucity of available substantive law from Guam, John Hancock seeks application of Massachusetts law. John Hancock bases this argument on the premise that application of Massachusetts law coincides with the parties' reasonable expectations at the time of application and execution of the policy.

## II. DISCUSSION

The Court's jurisdiction is based upon diversity of citizenship. Accordingly, West Virginia choice-of-law rules apply. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Pen Coal Corp. v. William H. McGee & Co., Inc.,* 903 F.Supp. 980, 983 (S.D.W.Va.1995).

The Supreme Court of Appeals of West Virginia consistently relies on the *Restatement (Second) of Conflict of Laws ("Restatement (Second)")* to determine which state's law should govern resolution of issues pertaining to interpretation of insurance contracts. *Nadler v. Liberty Mut. Fire Ins. Co.,* 188 W.Va. 329, 424 S.E.2d 256 (1992); *Joy Technologies Inc. v. Liberty Mut. Ins. Co.,* 187 W.Va. 742, 421 S.E.2d 493 (1992); *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.,* 182 W.Va. 580, 390

S.E.2d 562 (1990). This Court observed as much in *Pen Coal,* stating the West Virginia Court has created its own rule only in the absence of a *Restatement (Second)* rule on point. *Pen Coal,* 903 F.Supp. at 985.

Under section 188 of the *Restatement (Second),* if the contract does not contain a choice-of-law provision, the law of the state with the most significant relationship to the dispute governs. The *Restatement (Second),* however, provides specific rules for analyzing certain types of contracts. Section 192 governs choice-of-law with respect to life insurance contract disputes. Accordingly, this Court believes the West Virginia Court would adopt section 192 as its rule for resolving a dispute such as that presented here.

■ Section 192 provides in pertinent part:

The validity of a life insurance contract issued to the insured upon his application *and the rights created thereby* are determined, in the absence of an effective choice of law by the insured in his application, by the local law of the state *where the insured was domiciled at the time the policy was applied for,* unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

*Id.*[1] (emphasis added).

■ Plaintiff argues comment a to section 192 renders the section inapplicable here because the disputed issue concerns a detail of performance.[2] The Court dis-

1. The parties dispute whether submission of the "Report of Death of an American Citizen" satisfies the beneficiary's obligation to provide proof of death under the terms of the policy. As this necessitates an interpretation of the rights and duties created under the life insurance contract, section 192 clearly applies.

2. Comment a provides, in pertinent part, that section 192 "does not apply to questions in-

volving details of performance which are governed by the local law of the state where the performance either has taken, or is to take place." *Id.* Section 206 governs choice of law for details of performance, and it states pertinently, "The rule of this Section is applicable only to details of performance *and not to those matters which substantially affect the*

agrees. The "details of performance" referenced in comment a refers merely to the manner, method and time of performance. It does not apply to the substantive rights created under the life insurance contract. The parties here dispute the adequacy of the proof of death offered by the beneficiary under the terms of the policy. This constitutes a substantive legal duty and not merely a detail of performance. The dispute unquestionably "substantially affect[s] the nature and extent of the obligations imposed by the contract[,]" and section 192 is consequently applicable.

The insured applied for and received the life insurance policy from John Hancock in the Territory of Guam. Accordingly, pursuant to section 192, Guam law should govern this dispute. The law of another state can apply only if the state maintains a more significant relationship with the parties and the transaction than the insured's domicile at the time of application.

■ Danbi argues West Virginia maintains a more significant relationship with the parties and transaction because the insured moved to Guam only one month before application for the policy. Additionally, she asserts that since she lived in West Virginia at the time of insured's alleged death, West Virginia law should apply.

Section 192, however, focuses primarily on the actions of the insured, not the beneficiary. Further, the insured's relocation to Guam just before the application is irrelevant, given section 192's failure to place timing in the mix. Second, section 192 focuses on the domicile at the time of application for the policy.

John Hancock asserts that Guam law and, secondarily, Massachusetts law should apply.[3] Its secondary argument in favor of Massachusetts law is based on the facts: (1) the insured made all premium payments at the Boston, Massachusetts office, (2) the policy originated out of Boston, (3) John Hancock required that members direct all correspondence to its Boston office and (4) required that beneficiaries send proof of death of the insured to the Boston office. Further, Defendant argues that application of Massachusetts law comports with the reasonable expectations of the parties at the time of application.

Section 192, however, states the law of another state will apply only when another state has more significant contacts with the parties and transaction than the insured's domicile. Section 192 focuses on the insured's domicile because it presumes the insured's dominant interests lie in that state. The insured chose to live in Guam and chose to apply for a policy of insurance for her daughter in Guam. John Hancock, quite simply, has not demonstrated Massachusetts has a more significant relationship to the parties than Guam.

Further, as drafter of the policy, John Hancock had ample opportunity to make Massachusetts law applicable by including a choice-of-law provision in the policy. Knowing Jung lived in Guam at the time of application, it nonetheless failed to make provision for the applicable law.

In sum, section 192 mandates Guam law govern the instant action, due to the fact that the insured was domiciled in Guam at the time of application for the policy. Neither party has demonstrated another state maintains a more significant relationship to the parties or the transaction. Pursu-

---

*nature and extent of the obligations imposed by the contract." Id.* (emphasis added).

**3.** In asserting the primacy of Guam law, John Hancock nonetheless asserts that since there is a vacuum of applicable Guam law this Court should simply declare Massachusetts law applies. The Court is disinclined to do so, given the lack of any citation of authority for that course. As further noted by John Hancock, the Court may have to look to other jurisdictions for guidance in the absence of applicable Guam law. The Court is disinclined at this juncture, however, to catalog for either party which jurisdictions it may consult.

ant to section 192, thus ends the inquiry.[4]

## III. CONCLUSION

The Court **GRANTS** Plaintiff's motion for a ruling on choice of law, insofar as it seeks a ruling, and the Court **HOLDS** Guam law will apply to this action.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.

---

4. The Court notes the record is oblique concerning whether Guam was Jung's "domicile[,]" as opposed to merely being her residence, at the time of the application. The parties' failure to adequately illuminate this critical issue and other issues has left the Court largely to speculate. The Court has, in essence, had to assume a Guam domicile on the current record, an assumption with which it is not entirely comfortable.

The primary reason for the Court's assumption is found in comment b to section 192. Comment b states "In the absence of *strong* countervailing considerations, the insured will be held to be domiciled in the state of which he describes himself as a resident in his application to the insurance company." *Id.* cmt. b. (emphasis added). Presumably, the described location would be Guam. Adding silt to already murky waters, however, is comment d:

On occasion, a state which was not the domicil of the insured at the time the policy was applied for will nevertheless, with respect to the particular issue, be the state of most significant relationship to the transaction and the parties and hence the state of the applicable law. This may be so, for example, *in a situation where the relationship of the insured to the state of his domicil is a slight one, as may be true in the case of military personnel."*
*Id.* cmt. d. The record is unclear concerning whether Jung, like her husband, was a member of the military.

The Court has done its level best to resolve the thorny conflict-of-law issue on sparse briefing, given the fast-approaching trial date. As the parties are well aware, however, even a few facts change a choice-of-law analysis dramatically.